**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION**

**JAMES DEVON BROWN**                                                              **PETITIONER**

**v.**                                                        **CIVIL ACTION NO.: 1:20-cv-282-LG-MTP**

**JOE ERRINGTON**                                                                **RESPONDENT**

## REPORT AND RECOMMENDATION

BEFORE THE COURT is the Petition for Writ of Habeas Corpus [1] pursuant to 28 U.S.C. § 2254 filed by James Devon Brown. Having considered the submissions of the parties, the record of the state proceedings, and the applicable law, the undersigned recommends that the Petition [1] be denied.

## FACTS[1] AND PROCEDURAL HISTORY

James Devon Brown lived with his girlfriend, Lamonica Bodie, at her home in Gautier, Mississippi. He was unemployed. On the morning of February 3, 2016, Lamonica left the home to give a friend a ride to the bus station. ([6-9] at 67-68). Lamonica did not tell Brown what she was going to do. That same morning Brown left the home in search of a job. While driving, Brown saw Lamonica in her car with another man. ([6-9] at 68). Brown began to make repeated phone calls to Lamonica. Through a [series] of short phone calls—initiated by Brown and ending with Lamonica hanging up—they arranged to meet back at Lamonica's house.

Once there Lamonica and Brown discussed their relationship. While folding laundry in the bedroom, Lamonica told Brown she wanted to end the relationship. She then asked him to

---

[1] Except as otherwise noted, the factual summary is taken verbatim from the Mississippi Court of Appeals' opinion affirming the conviction of Petitioner. *See Brown v. State*, 285 So. 3d 671, 675-76 (Miss. Ct. App.), *reh'g denied* (Sept. 17, 2019), *cert. denied*, 284 So. 3d 753 (Miss. 2019). The undersigned has confirmed the factual synopsis with references to the record in this case.

move out. Brown asked Lamonica if he could sleep on the couch until he got his tax return money. Lamonica said no.

Brown suddenly took off his shirt and said, "I don't have anything to lose." Lamonica, feeling uncomfortable, tried to reach for her keys and cellphone. Brown grabbed her from behind and slid his forearm around her neck. As Lamonica tried to pull away, his grip tightened. Brown's arm constricted, and he "was choking [Lamonica] more." Lamonica said at first she could breathe "a little bit." However, "all of a sudden it got tighter and tighter and [she] couldn't breathe." Lamonica testified that as Brown's grip got tighter she "just knew [she] was going to die." The pair then collapsed in a heap on the floor. ([6-9] at 64-65).

During the struggle Lamonica's phone rang, but she could not answer it. Lamonica convinced Brown to let her text the caller to see what the person wanted. Instead, Lamonica texted her mother and told her to call 911. Unfortunately, Lamonica's mother never received the message. ([6-9] at 69-71). Lamonica was unsure whether or not she lost consciousness during the attack. Eventually, Lamonica was able to comfort Brown by rubbing his head, ending the struggle. ([6-9] at 65-66). Brown then told her to "tell them somebody else did this" to her. ([6-9] at 71). He then left the house, and Lamonica went inside the bathroom and called 911. The dispatcher testified that during the call Lamonica's voice was "really strained." ([6-9] at 59).

Officer Daniel Mathis responded to the call. ([6-9] at 87-88). When he arrived Lamonica was crying and upset. She complained that her head hurt and her throat was sore. Officer Mathis called for an ambulance. Lamonica told the officer that Brown had choked her in the bedroom during a physical altercation. Officer Mathis noticed and photographed extensive bruising on both sides of Lamonica's neck and burst blood vessels in both eyes. ([6-9] at 91). The bruising and burst vessels worsened over the following days. ([6-9] at 72-75).

2

Lamonica provided Officer Mathis with a description of Brown's car. ([6-9] at 92). Several minutes later, officers pulled Brown over and arrested him. ([6-9] at 92). Lamonica was transported via ambulance to [Ocean Springs Hospital],[2] where she was examined by Dr. Steven Boskovick. ([6-9] at 3). Dr. Boskovick testified that Lamonica's injuries were consistent with someone who had been strangled. ([6-9] at 100-03).

Lamonica later signed an affidavit stating that the incident was a misunderstanding, and that she no longer wished to go along with or be a part of any prosecution. She said that this affidavit was "before [she] understood what the consequences [were] going to be." ([6-9] at 83-84).

During trial, Brown testified in his own defense. He swore he never put a hand on Lamonica. He stated that he did not strangle her and that they had never been in a physical altercation. ([6-9] at 137). His theory was that perhaps a man named Marcus did it. Brown requested that the jury be given a lesser-included offense instruction on simple domestic violence. The trial court denied Brown's request.

*See Brown v. State*, 285 So. 3d 671, 675–76 (Miss. Ct. App.), *reh'g denied* (Sept. 17, 2019), *cert. denied*, 284 So. 3d 753 (Miss. 2019).

On August 30, 2017, James Devon Brown was convicted in the Circuit Court of Jackson County, Mississippi of aggravated assault. ([6-3] at 8). He was sentenced to life without the possibility of parole as a habitual offender pursuant to Mississippi Code Annotated § 99-19-83. ([6-3] at 8).

---

[2] The Court of Appeals indicated that Lamonica was transported to Singing River Hospital, however, the record indicates that she was transported to Ocean Springs Hospital. ([6-9] at 93, 100). Dr. Boskovick testified that he works in both hospitals' emergency departments. ([6-9] at 97).

On May 22, 2018, Brown appealed his conviction to the Mississippi Court of Appeals, raising two issues in his brief:

1.  The trial court erred in refusing instruction D-11.

2.  The trial court erred in sentencing Brown as a habitual offender.

([6-1] at 6). Brown also filed a "Pro Se Supplemental Brief in Criminal Appeal" in which he raised the following issues (as stated by the Petitioner):

3.  Trial court erred in sentencing Appellant to a sentence greater than the plea bargain offered by the State.

4.  Appellant was denied his due process right to a fast and speedy trial.

([6-2] at 6).

On June 11, 2019, the Mississippi Court of Appeals affirmed Brown's conviction and sentence. *See Brown v. State*, 285 So.3d 671 (Miss. Ct. App. 2019), *reh'g denied*, Sept. 17, 2019, *cert. denied*, Dec. 12, 2019. The court of appeals found that the jury instruction including the lesser offense was properly excluded, that the trial court properly sentenced Brown as a habitual offender, that the trial court did not err in sentencing Brown to a sentence greater than the plea bargain offered by the State, and that Brown was not denied his right to a fast and speedy trial. *Id*.

On June 16, 2020, Brown filed his Motion for Post-Conviction Collateral Relief [3] raising the following issues (as stated by the Petitioner):

1.  Trial court erred in sentencing Appellant to a sentence greater than the plea bargain offered by the State which is abuse of discretion. Actual innocence of the indicted charge of aggravated domestic violence.

---

[3] Petitioner titled the document "Application for Leave to Proceed in the Trial Court", and the Mississippi Supreme Court refers to the document as such. ([6-12] at 2, 4).

2. Trial court erred by allowing the State to move forward on Pen Pack when no one from MDOC was th[ere] to confirm the Pen Pack was authentic.

3. The court erred when it allowed the State to habitualize me after I was convicted, when this should have taken place pre-trial 30 days before.

4. Trial counsel erred when she file motion to withdraw cl[ient's] Motion to Object to amending him as a habitual offender [and] he did file a motion to dismiss charges for failure to provide a fast and speedy trial were going to withdraw that motion.

5. Direct Appeal/Appellate ineffective assistance of counsel for failure to raise the "significant and obvious" issues as to the ineffective assistance of counsel, pre trial and at trial.

([6-12] at 9). The Mississippi Supreme Court denied Petitioner's Motion, holding that Brown's ineffective assistance of counsel claims "fail to satisfy the requisite prongs of deficient performance and prejudice outlined in *Strickland v. Washington*" and found his remaining claims to be without merit. ([6-12] at 2).

Brown filed the instant Petition for Writ of Habeas Corpus [1] on August 31, 2020. A Response [5] was filed on October 15, 2020 along with the state court record. ([5] [6]). On November 2, 2020, Brown filed his Reply [7]. This matter is now ripe for review.

## ANALYSIS

### Petition for Writ of Habeas Corpus

Petitioner raises two grounds for review in his Petition [1] and seeks to have his sentence vacated, to be granted a new trial or evidentiary hearing, and revocation of his status as a habitual offender. ([1] at 17). The Court reviews these arguments using the standard set forth in 28 U.S.C. § 2254(d) which states:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgement of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Brown asserts mixed questions of law and fact regarding his conviction; therefore, subsection (d)(1) applies. *See Morris v. Cain*, 186 F.3d 581, 584 (5th Cir. 1999) (discussing how to apply 28 U.S.C. § 2254(d)). The clauses in § 2254(d)(1) "contrary to" and "unreasonable application" have independent meanings. *Williams v. Taylor*, 529 U.S. 362, 405 (2000). A decision from a state court is "contrary to" Supreme Court precedent only if it reaches a conclusion opposite one reached by the Supreme Court on an issue of law, or if the state court encounters materially indistinguishable facts from those at play in a Supreme Court decision and the state court reaches an opposite result. *Id.*

The definition of "unreasonable application" is different. This clause is implicated when a "state-court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409. This Court must consider if the state court's application of the law was objectively unreasonable. *Id.* "An unreasonable application of federal law is different from an incorrect or erroneous application of federal law." *Id.* at 412.

"Habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Harrington v. Richter*, 562 U.S. 86, 102-103 (2011) (quoting *Jackson v. Virginia*, 443 U.S. 307, 332 n. 5 (1979) (Stevens, J., concurring in judgment)). Federal courts do not sit as "super" state supreme courts and may decide the issues presented by the habeas corpus petition "only to the extent that federal constitutional issues are implicated." *Smith v. McCotter*, 786 F.2d 697, 700 (5th Cir. 1986).

**Ground One: Whether the trial court erred in sentencing Brown to a sentence greater than the plea bargain offered by the State.**

Brown argues that his sentence to life without parole exceeded the recommended plea bargain sentence and that this was done to penalize him for exercising his constitutional right to a trial by jury. ([1-1] at 4). When Brown raised this issue on appeal to the Mississippi Court of Appeals, the court found that his "previous convictions made him applicable for habitual-offender status under the statute" and there was "no evidence in the record that Brown was in any way 'punished for rejecting a plea deal.'" *Brown*, 285 So. 3d at 679. The Mississippi Supreme Court found that this claim was without merit. ([6-12] at 2).

The constitution is not violated simply because the State exercises its discretion in the enforcement of its habitual criminal statute in order to encourage a guilty plea. The Fifth Circuit has stated as follows:

> The Supreme Court's plea bargaining decisions make it clear that a state is free to encourage guilty pleas by offering substantial benefits to a defendant, or by threatening an accused with more severe punishment should a negotiation plea be refused. It is equally clear that a defendant is free to accept or reject the 'bargain' offered by the state. Once the bargain—whether it be reduced charges, a recommended sentence, or some other concession—is rejected, however, the defendant cannot complain that the denial of the rejected offer constitutes a punishment or is evidence of judicial vindictiveness. To accept such an argument is to ignore completely the underlying philosophy and purposes of the plea bargaining system. If a defendant can successfully demand the same leniency after standing trial that was offered to him prior to trial in exchange for a guilty plea, all the incentives to plea bargain disappear; the defendant has nothing to lose by going to trial.

*Frank v. Blackburn*, 646 F.2d 873, 883 (5th Cir. 1980) (citations omitted); *see also Smallwood v. Johnson*, 73 F.3d 1343, 1351 (5th Cir. 1996) ("It is clear that due process is not violated when a state prosecutor exercises his discretion and charges a defendant as a habitual offender for refusing a plea bargain.").

The record clearly indicates that Petitioner was aware of the risk of rejecting the State's plea bargain:

> THE COURT: He's aware he's looking at life without parole?
>
> MS. PRESLEY: Yes, Your Honor. I would like to put on the record we have gotten a plea recommendation. It was defense's recommendation that he take the plea. He's decided not to do that.
>
> THE COURT: Is he here?
>
> MS. PRESLEY: He is, Your Honor.
>
> THE COURT: Okay.
>
> MS. PRESLEY: He's decided not to take the plea recommendation and we are prepared for trial tomorrow.
>
> THE COURT: So, Mr. Brown, you know if you are convicted you can get life without parole?
>
> THE DEFENDANT: Yes, ma'am.
>
> THE COURT: And you're willing to – you still want a trial?
>
> THE DEFENDANT: I didn't do anything to her.
>
> THE COURT: Okay. I just want to make you aware what you're facing.
>
> MS. PRESLEY: We've discussed multiple times with him the plea recommendation and he's opted not to take it.
>
> THE COURT: Okay. It's his choice.

([6-9] at 17-18). Brown had notice of the plea recommendation and acknowledged that he risked being sentence to life without parole if he went to trial. He cannot now claim that he is being punished by deciding not to take it.

Brown also asserts that the State untimely sought amendment to the indictment to charge him as a habitual offender. ([1-1] at 5). The Court of Appeals found that the Uniform Rules of Circuit and County Court which were in place at the time allowed for amendment of the

indictment to charge a defendant as a habitual offender as long as "the defendant is afforded a fair opportunity to present a defense and is not unfairly surprised." Uniform Rule of Circuit and County Court 7.09; ([5-1] at 4). The Court of Appeals also found that there was no prejudice to Petitioner as, even after the State amended the indictment, he refused to accept the plea deal. ([5-1] at 4). The Supreme Court of Mississippi found that this claim was without merit. ([6-12] at 2).

The sufficiency of a state indictment is not a matter of federal habeas corpus relief unless it can be shown that the indictment was so defective that the convicting court had no jurisdiction. *Riley v. Cockrell,* 339 F.3d 308, 313–14 (5th Cir. 2003), *cert. denied,* 543 U.S. 1056 (2005). Moreover, "[w]here the state courts have held that an indictment is sufficient under state law, a federal court need not address that issue." *McKay v. Collins,* 12 F.3d 66, 68 (5th Cir. 1994) (citation omitted)*; see also Alexander v. McCotter,* 775 F.2d 595, 598 (5th Cir. 1985). The state courts examined this issue and found that the indictment was sufficient under the rules at the time that the amendment was made. Brown has not shown that the indictment was "so defective that the convicting court had no jurisdiction" nor has he shown that the state court allowing for the amendment was "contrary to, or involved an unreasonable application of, clearly established Federal law ..." 28 U.S.C. § 2254(d)(1). As such, Brown's claim for federal habeas relief on this ground should be denied.

Brown has failed to establish that the Mississippi Supreme Court's rejection of these claims was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States. As such, Brown is not entitled to habeas relief on this ground.

**Ground Two: Appellant was denied his due process right to a fast and speedy trial.**

Brown argues that he was denied both his statutory and constitutional rights to a speedy trial. ([1-1] at 5). The Mississippi Supreme Court found that Brown's claim was without merit. ([6-12] at 2). Brown also submitted this issue on direct appeal to the Mississippi Court of Appeals. *See Brown*, 285 So.3d at 681, 683. In an in-depth opinion, the Court of Appeals applied the *Barker* factors and found that his right to a speedy trial was not violated. *Id.*; *see Barker v. Wingo*, 407 U.S. 514, 530 (1972). This Court may only grant relief on this ground if the state court's rejection of his speedy-trial claim was contrary to, or involved an objectively unreasonable application of, clearly established federal law. *See Goodrum v. Quarterman*, 547 F.3d 249, 256 (5th Cir. 2008).

The Court of Appeals found that Brown's right to a speedy trial pursuant to Miss. Code Ann. § 99-17-1 was not violated. Brown's assertion in this habeas matter that his state statutory right to a speedy trial was violated fails to raise an issue for federal habeas consideration. *See Charles v. Thaler*, 629 F.3d 494, 500-01 (5th Cir. 2011) ("A federal court lacks authority to rule that a state court incorrectly interpreted its own law. When, as here, a state court's legal conclusions are affirmed by the highest court in that state, those conclusions are state law.").

The Sixth Amendment guarantees criminal defendants the right to a speedy trial. *See* U.S. Const. Amend. VI. In *Barker v. Wingo*, the United States Supreme Court established a four-part balancing test to be used for determining whether a defendant received a speedy trial within the meaning of the Sixth Amendment. *Barker*, 407 U.S. at 530; s*ee Knox v. Johnson*, 224 F.3d 470, 477 (5th Cir. 2000). The *Barker* analysis requires the court to consider the "[l]ength of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant." *Barker*, 407 U.S. at 530. The first factor—the length of the delay—serves as the "triggering

mechanism. Until there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance." *Id*.

The Court of Appeals applied the *Barker* factors and determined that many of the delays at trial were attributable to Brown, that three of the four *Barker* factors weighed in favor of the State, and ultimately held that his right to a speedy trial was not violated. *See Brown*, 285 So.3d at 681, 683. Because the dates of the various delays in the trial are important, the Court of Appeals prepared the following timeline:[4]

February 3, 2016 Arrest

July 7, 2016 Indictment for aggravated domestic violence

September 7, 2016 "Waiver Arraignment/ Plea/Trial Setting/Schedule Order" entered; Brown filed "Motion for Discovery/Speedy Trial Demand"

November 9, 2016 Trial scheduled; Defense requested and was granted a continuance to meet with the victim ([6-9] at 6).

January 9, 2017 Brown's *pro se* letter to the circuit clerk requesting a speedy trial received

February 7, 2017 Trial scheduled; State requested continuance so defense could meet with the victim ([6-9] at 7).

February 15, 2017 Brown rejected the State's plea offer; State requested a continuance and filed "Motion to Amend as Habitual Offender Pursuant to MS Code Annotated § 99-19-83" ([6-9] at 8).

March 30, 2017 Brown's *pro se* "Motion to Object to the Amending as Habitual Offender Pursuant to Mississippi Code Annotated § 99-19-83" filed

May 1, 2017 Brown's "Motion for Mental Evaluation" filed

May 5, 2017 "Order for Mental Evaluation and Treatment" entered

May 9, 2017 State requested continuance pending results of Brown's mental evaluation ([6-9] at 9-10).

---

[4] Petitioner has not objected to or challenged the timeline set forth by the Court of Appeals.

June 2, 2017 State requested another continuance for Brown's mental evaluation ([6-9] at 11-12).

June 27, 2017 Brown's *pro se* "Motion to Dismiss Charges for Failure to Provide a Fast and Speedy Trial" entered

July 17, 2017 "Order for Mental Evaluation and Treatment" entered

(August 3, 2017 Date of Mental Evaluation)[5]

August 28, 2017 Brown's counsel withdrew "Motion to Dismiss Charges for Failure to Provide a Fast and Speedy Trial"; "Order Amending Indictment to Charge Defendant as Habitual Offender Pursuant to Mississippi Code Annotated § 99-19-83" entered ([6-9] at 13-18).

August 29, 2017 Trial ([6-9] at 19).

*Brown*, 285 So.3d at 679-80.

The Fifth Circuit has held that a delay of longer than one year triggers the *Barker* analysis. *See U.S. v. Frye*, 372 F.3d 729, 737 (5th Cir. 2004).  Because the delay between Petitioner's arrest on February 3, 2016, and his trial on August 29, 2017, is a total of 573 days (more than one year), the delay prompts a full, four-step *Barker* analysis. ([6-8] at 41) ([6-9] at 19); *see U.S. v. Frye,* 372 F.3d 729, 737 (5th Cir.2004), *cert. denied,* 543 U.S. 1155 (2005) (referring to a delay "longer than our one-year guideline"); *Robinson v. Whitley*, 2 F.3d 562, 568 (5th Cir.1993), *cert. denied,* 510 U.S. 1167 (1994) (citing circuit law that "generally requires a delay of one year to trigger speedy trial analysis") (citation omitted).

As for the second factor — the reasons for the delay—"[a] deliberate and intentional delay by the prosecution for the purpose of hindering the defense or otherwise gaining a tactical advantage is weighed heavily against the state." *Cowart v. Hargett,* 16 F .3d 642, 647 (5th Cir.1994), *cert. denied,* 513 U.S. 886 (1994). On the other hand, "[a]n unintentional and

---

[5] This date is pertinent to the calculation for speedy trial but was not originally included in the timeline put together by the Court of Appeals. ([6-6] at 3-21).

inadvertent delay ... is weighed much less heavily." *Id.* "A more neutral reason such as negligence or overcrowded courts should be weighted less heavily but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant." *Barker,* 407 U.S. at 531. "Where the state advances valid reasons for the delay, or the delay is attributable to acts of the defendant, this factor is weighed in favor of the state." *Cowart,* 16 F.3d at 647 (citing *Barker*).

The Court of Appeals analyzed the various delays between Brown's original trial date until the August 29, 2017 trial and found that "[i]n our speedy-trial calculation we weigh the following in Brown's favor: the time from Brown's arrest to the first trial setting, the unexplained continuance by the State, and the dates between Brown's mental evaluation and his final trial." *Brown*, 285 So.3d at 682. The time period between the first trial setting and the State's request for an unexplained continuance was weighed in favor of the State, as the purpose of the continuance was to provide Brown an opportunity to speak with the victim. The Court of Appeals also found that the time period between Brown's request for a mental evaluation and the day that it was done, should be weighed in favor of the state because it was done for Brown's benefit and is attributable to his request for the evaluation. The apportionment of the various delays analyzed by the Court of Appeals is in accordance with case law and the record.[6]

The third *Barker* factor is whether the petitioner effectively asserted his right to a speedy trial. However, not every invocation of the right will suffice. "Defendants must appropriately assert their speedy-trial rights, as viewed in light of their other conduct." *Laws v. Stephens*, 536 Fed. App'x 409, 413 (5th Cir. 2013). The Court of Appeals found that while Brown did move for

---

[6] The Court of Appeals found that 383 days were attributable to the State. When calculating these delays, the undersigned found that the delay was actually only 381 days. This difference is *de minimis* and does not impact the analysis.

a speedy trial, he also moved for a mental evaluation which required a continuance and that this did not "manifest a desire to be tried promptly." *Brown*, 285 So.3d at 682.

Brown asserted his right to a speedy trial three times in the record. However, during this time he also requested a continuance in order to meet with the victim and a mental evaluation, both of which undermine his demand. *See West v. Howell*, 46 F.3d 67 (5th Cir. 1995) (finding no speedy trial violation where the delay was partially attributable to defendant's own motions and requests for continuance of trial). This factor also weighs in favor of the State.

The fourth and final *Barker* factor is whether the Petitioner was prejudiced by the delay in trial. In *Barker*, the Supreme Court held that prejudice "should be assessed in the light of the interests of defendants which the speedy trial right was designed to protect." *Barker*, 407 U.S. at 532. The Court identified three of these interests: "(i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired." *Id*. The third factor is the "most serious" because "the inability of a defendant adequately to prepare his case skews the fairness of the entire system." *Id*. The defendant bears the burden to demonstrate actual prejudice unless some or all of the first three factors weigh heavily in the defendant's favor. *See U.S. v. Molina-Solorio*, 577 F.3d 300, 307 (5th Cir. 2009). Because the first three factors do not weigh heavily in Brown's favor, he must show actual prejudice. *See U.S. v. Harris*, 566 F.3d 422, 433 (5th Cir. 2009) (finding that if the first three *Barker* factors do not weigh "heavily" in the petitioner's favor, there is no "presumption of prejudice" and he must demonstrate "actual prejudice").

Brown asserts that as a result of the pretrial delay, the victim changed her testimony. ([1-1] at 12). He also alleges that his defense was impaired because "the actual perpetrator of this crime, Marcus had disappeared." ([1-1] at 20). The Court of Appeals found that Brown was not

14

prejudiced by the delay, that the change in the victim's testimony was not sufficient to prove that the delay caused Brown prejudice, and that there was "no evidence in the record that Brown tried to subpoena Marcus or made any attempt at all to locate him." *Brown*, 258 So.3d at 682-83.

Brown claims that he was prejudiced by the delay because the victim changed her testimony from an affidavit stating that it was a "misunderstanding." ([6-2] at 34); (1-1] at 12). The affidavit Brown is referring to was signed on February 22, 2016, more than four months prior to the date he was indicted for aggravated domestic violence by the grand jury. ([6-2] at 34). At trial, Lamonica testified that she signed the affidavit "before [she] understood what the consequences was [sic] going to be." ([6-9] at 84).

The Fifth Circuit has previously rejected a petitioner's claim of prejudice based on a change of witnesses' testimony where the witnesses were not made unavailable, and the petitioner was able to adequately prepare his case and cross-examine the witnesses. *See Frye*, 489 F.3d at 213; *see also Dora v. MDOC,* No. 1:08CV170-SA-JAD, 2011 WL 198118, at *11 (5th Cir. 2012) ("A witness's change in testimony alone is insufficient to constitute prejudice particularly where there is ample opportunity for cross-examination to highlight any changes."). A review of the record reveals that Brown was given an opportunity to cross-examine Lamonica at trial and, therefore, no actual prejudice has been shown.

Brown's general assertion that Marcus disappeared is also insufficient to prove prejudice under the final prong of the *Barker* factors. To prove prejudice, defendants must indicate the content and relevance of the lost testimony, and how its absence impaired his defense. *See Harris*, 566 F.3d at 433 (finding that a "blanket statement" that "gives no indication as to the content and relevance of the lost testimony, and how its absence impaired [petitioner's] defense" is insufficient to show actual prejudice). Furthermore, as indicated by the Court of Appeals, there

is no evidence in the record that Brown subpoenaed Marcus for his trial, or that Marcus would have been available to be a witness at trial if it had occurred earlier. Brown has not sufficiently shown actual prejudice by the delay.

In weighing the *Barker* factors, the undersigned finds that the Mississippi Court of Appeals' decision rejecting Brown's speedy trial claim was neither contrary to, not an unreasonable application of, clearly established federal law, and habeas relief on this ground should be denied.

## RECOMMENDATION

For the reasons stated above, the undersigned recommends that the relief sought in James Devon Brown's Petition for Writ of Habeas Corpus [1] be denied and that the Petition be dismissed with prejudice.

## NOTICE OF RIGHT TO OBJECT

In accordance with the rules and 28 U.S.C. § 636(b)(1), any party within fourteen days after being served a copy of this recommendation, may serve and file written objections to the recommendations, with a copy to the judge, the magistrate judge and the opposing party. The District Judge at the time may accept, reject or modify in whole or part, the recommendations of the Magistrate Judge, or may receive further evidence or recommit the matter to this Court with instructions. The parties are hereby notified that failure to file written objections to the proposed findings, conclusions, and recommendations contained within this report and recommendation within fourteen days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the proposed factual findings and legal conclusions accepted by the district court to which the party has not objected. *Douglass v. United Servs. Auto. Ass'n,* 79 F.3d 1415, 1428-29 (5th Cir. 1996).

THIS the 29th day of July, 2021.

s/Michael T. Parker
UNITED STATES MAGISTRATE JUDGE